ELECTRONIC ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT METRO-NORTH'S MOTION TO QUASH THIRD PARTY SUBPOENAS [333]. As set forth in the parties' filings (Dkts. ##333, 333-2 to -8, 369, 369-2 to -9, 380 & 380-2), at issue here are four subpoenas issued by defendant Pitney Bowes literally on the eve of the January 16, 2009 discovery deadline on four environmental consultants used by defendant Metro North, namely Moran Environmental Recovery, LLC ["Moran"], Waste Technologies Services, Inc. ["Waste Technologies"], Metcalf & Eddy, Inc. ["Metcalf"], and York Analytical Laboratories, Inc. ["York"]. (Dkt. #333, at 1; Dkt. #333-2, at 1-3; Dkts. ##333-4 to -8). In its brief, defendant Metro-North argues that the subpoenas were not timely served, did not allow for a reasonable time for compliance, and were too broad in scope (Dkt. #333-2, at 3-5), they seek irrelevant documents and are unduly burdensome (at 5-6), and the subpoena to Waste Technologies is defective in that Waste Technologies is located in Lewiston, NY, which is located in the Western District of New York (at 6-7).

In its brief in opposition, defendant Pitney Bowes responds that defendant Metro-North failed to provide relevant documents in its documents produced on January 9-10, 2009, that defendant Pitney Bowes learned during the January 12, 2009 deposition of Kenneth McHale, Metro-North's Rule 30(b)(6) corporate representative, that such documents do exist, and that defendant Pitney-Bowes identified for defendant Metro-North which documents were outstanding that same night. (Dkt. #369, at 2-3; Dkts. ##369-2 to -5). The next day, defendant Pitney Bowes prepared the four third-party subpoenas, and counsel for defendant Pitney Bowes expressed surprise at this motion as they were cooperating with these third parties "to focus on producing documents relevant to certain specific reports and incidents involving [defendant] Metro-North." (Dkt. #369, at 3-6 (footnote omitted); Dkts. ##369-6 to -7). More specifically, defendant Pitney Bowes argues that defendant Metro-North lacks standing to quash the third-party subpoenas (Dkt. #369, at 6-7), the subpoenas seek relevant documents (at 8), insofar as the third parties have expressed their willingness to comply with the subpoenas, the question of their timeliness is moot (at 9-10), the subpoenas are not burdensome (at 10-11), and defendant Pitney Bowes should be permitted to cure and re-issue the subpoena directed toward Waste Technologies (at 12).

In its reply brief, defendant Metro-North characterized defendant Pitney Bowes' discovery requests as "massive and . . . unbounded by even the slightest concepts of relevancy," in that, for example, they requested documents back to 1905, when defendant Metro-North has only been in existence since 1983, sought documents for all hazardous substances, not just PCB's, and sought documents for all of defendant Metro-North's 200 miles of tracks in Connecticut, when only ½ mile from the adjacent properties is necessary. (Dkt. #380, at 1-2; Dkt. #380-2). Defendant Metro-North further contends that it has standing to object to the subpoenas (Dkt. #380, at 3-4), the information sought is not relevant (at 4-5), the subpoenas are duplicative of document requests already propounded to defendant Metro-North (at 5), the subpoenas are untimely (at 6-7), and lastly that defendant Pitney Bowes should not be permitted to reissue the subpoena to Waste Technologies (at 7).

At his deposition, taken on January 12, 2009, McHale identified an isolated number of PCB's spills occurring at or near the Stamford train yard (Dkt. #369-4, at 7-8, 14, 32), and defendant Pitney Bowes' counsel promptly requested production of these documents, among others (Dkt. #369, at 3; Dkt. #369-5). On January 14-15, 2009, counsel for Pitney Bowes were cooperating with the third parties to identify a limited number of spills for which

documents were requested. (Dkts. #369-6 to -7).

Under these circumstances, the Magistrate Judge finds that defendant Metro-North has standing to object to the third party subpoenas, that the subpoenas were not untimely, and that any timeliness argument has become moot in light of the discussions between defendant Pitney Bowes and the third parties. However, it is clear that the subpoenas are, in defendant Metro-North's words, "unbounded by even the slightest concepts of relevancy" (Dkt. #380, at 1), and should be limited in the direction to which defendant Pitney Bowes and the third parties apparently were headed – namely only to any incidents since 1983, concerning PCB's, within the limits of the City of Stamford, and further limited to third party Moran, Metcalf and York only. These documents shall be produced **on or before February 18, 2009**, and only if they have not already been previously produced by defendant Metro-North. As to the subpoena directed to Waste Technologies, this Magistrate Judge is not inclined to either permit, or bar, any activity by defendant Pitney Bowes in another district.

This result is one that counsel, acting as mature and rational adults, should have reached on their own accord, without further wasting their clients' money and burdening the Court, once again.