UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Innis Arden Golf Club,<br>    *Plaintiff,*<br><br>        v.<br><br>Pitney Bowes, *et al.*,<br>    *Defendants.* | Civil No. 3:06cv1352 (JBA)<br><br><br><br>March 30, 2012 |

RULING ON OBJECTIONS [Doc. # # 579, 580]
TO MAGISTRATE JUDGE'S RULING [Doc. # 571]

On May 27, 2009, Magistrate Judge Margolis ruled [Doc. # 515] that Plaintiff's discovery abuses warranted sanctions, including attorneys fees and costs. She directed that the applications for such fees and costs await the entry of judgment in the case so as not to distract from the parties' trial readiness efforts. Following the grant of Defendants' Motions [Doc. # 522] for Summary Judgment, the Magistrate Judge issued her Ruling [Doc. # 571] on Defendant Pitney Bowes' and on Defendant Pateley's Applications for Attorneys' Fees and Costs ("Ruling") awarding Pitney Bowes $456,754.86 in attorney fees, $26,648.91 in expert fees and $32,940.90 for costs, totaling $489,695.76. Pateley was awarded $30,529.62 in attorney fees, and $2,570.00 for costs, totaling $33,100.12. It its initial application [Doc. # 541], Pitney Bowes had sought $748,532.65 fees and costs; Pateley [Doc. # 542] had sought $38,541.[1]

---

[1] Appeal was taken by Innis Arden on July 28, 2009 [Doc. # 538] and by Stipulation [Doc. # 615] was withdrawn from active consideration without prejudice with leave to reactivate pending ruling on defendants' pending fee application. At last, this Court's ruling is issued on Innis Arden's and PBI's objections to the Magistrate Judge's Ruling.

Plaintiff Innis Arden objects to the Ruling with respect to the award of fees to Pitney Bowes' in three areas: (1) expert deposition preparation; (2) work on *Daubert* motions; and (3) time entries and costs awarded for Pitney Bowes' National Contingency Plan expert Alfred Gravel as lacking adequate record to show they fell within the scope of the Sanctions Ruling.[2] Pitney Bowes, in turn, objects to the Magistrate Judge's exclusion of fees related to its spoilation motions and her application of the forum rule for out–of–state attorneys, seeking higher hourly rates under *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County Of Albany*, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds,* 522 F.3d 182 (2d Cir. 2008), and claiming misapplication of the presumption required by *Simmons v. New York Transit Auth.*, 575 F.3d 170 (2d Cir. 2009).[3] For the reasons that follow, the Ruling will be approved and adopted and objections overruled.

I.      Legal Standard

The parties agree that the standard to be used by this Court in evaluating the merits of the parties' objections to the Ruling is 'clearly erroneous' or 'contrary to law.' The Ruling is a "ruling on discovery," the standard of review of which is specified in 28 U.S.C.

---

[2] For this third area of objection, Innis Arden merely refers back to its original briefing. However, since the Ruling fully considered and rejected plaintiff's objections, crediting Pitney Bowes' reasons for inclusion of such costs, the Court has not been directed by Plaintiff to any claim in the Ruling on this point that is clearly erroneous or contrary to law and the objection is overruled.

[3] No objection has been lodged by Pateley or against the award to Pately. [Doc. #581.]

§ 636(b)(1)(A) as "any pretrial matter . . . except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, . . . to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim . . . , and to involuntarily dismiss an action." Such rulings are reviewed and reconsidered "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

II.     Discussion

Magistrate Judge Margolis' Ruling is a forty–five page careful, painstaking evaluation of Pitney Bowes' and Pateley's fees and costs applications and assessment of Innis Arden's voluminous objections, including to hourly rates, specific categories of fees and costs, and Pateley's entitlement to fees and costs.

    A.     Sanctions Awarded for *Daubert* Motions

Innis Arden seeks deletion of fees awarded for Pitney Bowes' *Daubert* motions, which it claims should have been excluded from the scope of sanctions. (Pl.'s 6/16/10 Obj. [Doc. # 580] at 23–28.) Pitney Bowes seeks an additional $173,208.10 fees for its successful spoilation motion which it asserts should have been included within the scope of the 2009 sanctions ruling. (Def.'s 6/16/10 Obj. [Doc. # 579] at 3–6.) There were multiple motions relating to Innis Arden's litigation missteps: Motion for Sanctions Pursuant to Fed. R. Civ. P. 37 [Doc. # 195], Motion for Sanctions for Spoliation of Evidence [Doc. # 419], Motion for Sanctions for Discovery Abuse [Doc. # 421], and Motion for Sanctions for Spoliation and *Daubert* Motions [Doc. # 426]. Even if pre–suit sample and file spoilation by Innis Arden's

environmental consultants continued into the litigation period, due to lack of litigation–hold precautions, and could be deemed a form of discovery abuse, this Court had specifically declined to award additional fees for the spoliation motion beyond the harsh preclusion sanction it imposed. (*See* Ruling and Order on Def.'s Motions for Sanctions for Spoliation [Doc. # 510].). The Magistrate Judge's full familiarity with the discovery difficulties in this case, and her line–drawing as to what to include and what to exclude as "motions and briefs regarding plaintiff's expert discovery issues" (Sanctions Ruling at 14) was informed and conscientious, and even if there could be two permissible views of the outcome of counsel's arguments, her choice was neither clearly erroneous nor contrary to law. The Court sees no clear error in her delineations, nor finds that they are contrary to law and thus overrules the objections.

B.   Fees for Expert Witness Preparation and Depositions

The Court does find one of Innis Arden's objections raises a serious potential for concern not expressly explored in the Ruling relative to the hours for which Pitney Bowes was awarded compensation related to preparation and deposing Innis Arden's experts Drs. Pignatello and Kaczmar. (Ex. 8 to Pl.'s Obj.) Pitney Bowes sought compensation for 566.3 hours totaling $166,395 for work claimed by seven attorneys and five paralegals in less than three months to prepare for two expert depositions that took three days, and included examination of experts' reports that together totaled only six pages. Even the Magistrate

4

Judge found this number "startling."[4] (Ruling at 19.) Pitney Bowes' response explains the scope of work, which included reviewing massive quantities of unsorted documents and other tasks. While counsel's deployment of the "small army" of Hunton & Williams and Day Pitney attorneys and staff for this task (Ruling at 12) may have seemed necessary to them, given the perceived criticality of plaintiffs' expert depositions and the shortened time frame for new counsel, (*see* Affidavit of Vicki A. O'Meara [Doc. # 569–2]), nothing in the time records submitted gives indication of any effort at restraint or efficiency, including reliance on any of prior counsel's work. Fees sought to be compensated must be both reasonable and necessary, and the proportionality and efficiency implicit in this standard is hard to see here in relation to the deposition preparation effort, particularly where Pitney Bowes described one of the expert reports as a "short puff piece" which was "not the product of scientific analysis" (Def.'s Mem. Supp. Fee Mot. [Doc. # 424] at 8) . All appearances are that overall case preparation effort was booked as "deposition preparation."     Nonetheless, while the Court might well have found that Pitney Bowes could not show this staffing and these hours, averaging to 189 hours of preparation per day of depositions, was "reasonably expended," *Cruz v. Local Union No. 3 of Internat'l Brotherhood of Elec Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."), and might have further reduced the amount awarded to encourage counsel

---

[4] The Ruling reduces the 566.3–hour figure by 18.4 hours.

to "litigate with their own pocketbooks in mind, instead of their opponents'," *Simmons*, 575 F.3d at 176, the Court finds that Magistrate Judge Margolis' Ruling is exemplary for its close review of vast time records and myriad objections, requiring rabbinical scrutiny, and is neither clearly erroneous nor contrary to law.

C. Forum Rate Diminution

Pitney Bowes maintains that the Magistrate Judge's 'forum rate' diminution of $28,988.10 under the *Simmons* analysis, requiring comparison of out-of-district and in-district hourly rates, erroneously used Murtha, Cullina rates, not Day Pitney rates, and that Pitney Bowes overcame the *Simmons* in-district rate presumption[5] by Hunton & Williams' extraordinary success. (Def.'s Obj. [Doc. # 579] at 7.) The Ruling acknowledges that Attorney Marty Steinberg provided "superb direction" (Ruling at 12), his professional prowess is set out in the Affidavit of his client's Executive Vice President and Chief Legal and Compliance Officer Vicki A. O'Meara (O'Meara Aff., Ex. 1 to Def.'s Rep. [Doc. #569–2]), and his litigation team achieved a "highly favorable result" within a short period of time. (Ruling at 12.) Nonetheless, the Ruling concludes that Pitney Bowes failed to make the two-part "particularized showing" that selection of Florida counsel was based on "experience-based, objective factors" and the likelihood "that use of in-district counsel would produce a substantially inferior result." (Ruling at 11.)

---

[5] The Ruling references a "strong" presumption in *Simmons* that this Court does not find in the text or purpose.

The essence of the Ruling was that it was the combined "extra muscle" of the Hunton & Williams and Day Pitney attorneys and resources that jump–started Pitney Bowes' defense preparations, to comply with this Court's fast-approaching final deadlines. (*See* Ruling at 13; O'Meara Affidavit ¶ 24.)  The Magistrate Judge found that the "inferior result" prong had not been satisfied because Connecticut counsel was part of the excellent result for Pitney Bowes, and would require the unsubstantiated conclusion that Day Pitney, "acting on its own without the assistance of H & W, would not have had the same positive result." (Ruling at 13.) However, she placed both Hunton & Williams and Day Pitney hourly rates on the "limousine" side of the scale and used the "sedan" rates of co–defendant Pateley's lead Connecticut counsel, leaving it to Pitney Bowes to pay the enhanced rates for their services. *See Simmons*, 575 F.3d at 177 (2d Cir. 2009) ("The [defendant] should not be required to pay for a limousine when a sedan could have done the job."). The record presented to Magistrate Judge Margolis was not unusual—dueling affidavits of practitioners regarding their respective opinions of prevailing hourly rates for commercial litigation in Connecticut courts, and the rates used by Magistrate Judge Margolis were supported by the record. (*See, e.g.*, Jeffrey Tinley Aff. [Doc. # 558] for Innis Arden; Craig A. Raabe Aff. [Doc. # 569–3] for Pitney Bowes.).  The Court rejects Pitney Bowes' argument that it was contrary to *Simmons* to have compared Hunton & Williams' rates with those of Murtha Cullina, and to have placed both Hunton & Williams and Day Pitney on the "limousine" side of the scale.

The Court is unpersuaded that the Magistrate Judge erred in any way in her decision to relegate the higher fee structure of the state's largest firm to the "limousine" side of the ledger. Moreover, Pitney Bowes failed to satisfy the second part of the *Simmons* showing necessary to overcome the forum rate presumption—that retention of Connecticut counsel "would produce a substantially inferior result." *Id.* at 175—76. Proving this "substantially inferior result" prong does not require a distasteful presentation of either professional deficiencies or braggadocio; it requires a showing of subject matter specialization or law firm resources needed for the particular case which Connecticut firms could not adequately provide. Pitney Bowes points to the O'Meara Affidavit as showing Hunton & Williams' superior prowess in this regard, but a client's excellent prior experience with, and confidence in, a particular out–of–state lawyer falls short of the required showing in the Court's view.

III.    Conclusion

In conclusion, having carefully reviewed the objections to the Magistrate Judge's Ruling, they are OVERRULED and the Ruling [Doc. # 571] is approved and adopted.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of March 2012.